# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

TOM CLAUSSEN,            )

             )

        Plaintiff,       )

             )

     v.           )   NO. 3:18-CV-00607-ALB-SMD

             )

POWERSECURE, INC.,     )

             )

        Defendant.   )

             )

             )

## <u>MEMORANDUM OPINION AND ORDER</u>

This is a wrongful death case arising from a truck wreck. The matter comes to the Court on a motion for partial summary judgment filed by Defendant PowerSecure, Inc. ("Defendant"). *See* Doc. 42. Defendant also filed a motion to exclude the expert opinions of Roland Brown, Doc. 43, and a motion to strike Plaintiff's request for a spoliation sanction and an objection to certain evidence, Doc. 53. Plaintiff Tom Claussen, as a Personal Representative of the Estate of Gwendolyn Campbell Claussen, deceased, ("Plaintiff"), opposed the motion for partial summary judgment, Doc. 48, the motion to exclude Brown's opinions, Doc. 48, and the motion to strike the request for spoliation and object to evidence, Doc. 65.

Plaintiff filed a five-count Complaint against Defendant, alleging that its employee Harry Greathouse ("Greathouse") caused the wreck that took Dr. Gwendolyn Claussen's life while driving a company truck. Count 1 alleges that Greathouse was wanton or reckless and seeks damages under the theory of respondeat superior. Count 2 alleges that Greathouse was negligent and seeks damages under the theory of respondeat superior. Count 3 alleges that Defendant was negligent in (a) hiring, (b) retaining, and/or (c) supervising Greathouse. Count 4 alleges Defendant negligently trained Greathouse. Count 5 alleges Defendant negligently entrusted Greathouse with the truck he was driving.

Defendant moves for summary judgment on Counts 1, 3, 4, and 5. Upon consideration, the Court concludes that the motion for partial summary judgment is due to be **GRANTED IN PART** and **DENIED IN PART**. The motion to exclude the expert opinions of Roland Brown is also due to be **GRANTED IN PART** and **DENIED IN PART**. Based on the reasoning herein, the motion to strike is **DENIED AS MOOT**.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also* Fed. R. Civ. P. 56(a). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323. Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324. Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1)(A),(B). Acceptable materials

under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

## BACKGROUND

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movant:

In April 2018, Greathouse was driving one of Defendant's trucks on his way home from work when he struck Claussen's SUV. The accident happened at an intersection where a two-lane road intersects the four-lane Highway 280. Greathouse did not fully stop at the stop sign for the intersection, traveled across Highway 280's two eastbound lanes and through the median without slowing, and struck Claussen's SUV as she was traveling on Highway 280 going west.

Claussen died as a result of her injuries.

Greathouse was not under the influence of alcohol or drugs at the time of the accident. He was also not texting or talking on either of the two phones (a work

phone and a personal phone) mounted in the vehicle. He was wearing the corrective lenses that he is required to wear to drive. He was driving at or under the speed limit.

At the time of the accident and for many years before, Greathouse held a Commercial Driver's License ("CDL") issued by the State of Alabama. From 1992 to 1996, Greathouse received ten citations for traffic violations. In December 1996, Alabama suspended Greathouse's CDL for these violations. While his Alabama license was suspended, Greathouse secured a license from Kentucky, which also suspended his license once the Kentucky authorities discovered the Alabama suspension. Alabama reinstated the license in 1997. Greathouse received additional tickets for speeding in 1999 and 2005.

Defendant hired Greathouse in August 2016. When he applied to work for Defendant, Greathouse checked the "Yes" box on a form next to "Has any license, permit, or privilege ever been suspended or revoked." But he did not provide additional details, and no one asked him to provide those details. Defendant ran a three-year check on Greathouse's driving history, which showed no accidents or traffic violations. Defendant also secured a verification from Greathouse's former employer that he had no safety performance issues over the previous 14 years. Defendant also made Greathouse successfully complete a road test.

On December 31, 2016, Greathouse attended a New Year's Eve party in Oklahoma at the home of one of his supervisors. When driving home in a co-worker's personal vehicle, he was stopped by police, taken to jail, and charged with driving under the influence of alcohol and for failure to wear a seatbelt. Greathouse had a 0.14 blood alcohol level and was, in fact, intoxicated.

The DUI charge set off a series of legal proceedings in Oklahoma. Greathouse received a notice that his driver's license would be revoked for 180 days because of the DUI. But his attorney appealed the revocation and Greathouse received a temporary license pending the outcome of an administrative hearing. In October of 2017, he pled *nolo contendere* to a lesser included offense of driving while intoxicated. Under an Oklahoma statute, the court deferred judgment on the DWI plea and required Greathouse to pay a fine, complete an alcohol and substance abuse course, and attend a victim impact panel. Judgment and sentencing were deferred until October 2019. Greathouse informed his supervisors of the arrest, the related legal proceedings, and that he believed the DWI charge would be expunged from his record due to the deferred judgment.

After his arrest for DUI but before the final resolution of the Oklahoma legal proceedings, Defendant gave Greathouse the truck that killed Dr. Claussen.

# DISCUSSION

As noted, Defendant has moved for summary judgment on Counts 1, 3, 4, and 5. Plaintiff does not oppose summary judgment on the negligent training claim in Count 4. *See* Doc. 48 at 8. Accordingly, summary judgment is due to be granted on that Count. The other counts are discussed below.

## Count 1—Wantonness

To hold a defendant liable for wanton conduct in Alabama, a plaintiff must establish a high degree of culpability. While negligent conduct is characterized by "inattention, thoughtlessness, or heedlessness" and "a lack of due care," *Monroe v. Brown*, 307 F.Supp.2d 1268, 1271 (M.D. Ala. 2004), wantonness is characterized by "a conscious act." *Ex parte Essary*, 992 So.2d 5, 9 (Ala. 2007) (internal citations omitted). Wantonness is willful misconduct undertaken with the knowledge that the likely or probable result will be injury, that is, with a conscious disregard for the rights or safety of others. *See, e.g., Alfa Mut. Ins. Co. v. Roush*, 723 So.2d 1250, 1256 (Ala.1998); *Bozeman v. Central Bank of the South*, 646 So.2d 601 (Ala.1994). Wantonness can also be established by reckless disregard for the rights or safety of others. *See* Ala. Code § 6–11–20(b)(3). Wantonness is, therefore, "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." *Id.* Because negligence is the "inadvertent omission of duty," and wantonness is about the "state of mind with which the act or omission is done," *Essary*, 992 So.2d

at 9, the Alabama Supreme Court has explained: "Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability." *Tolbert v. Tolbert*, 903 So.2d 103, 114 (Ala.2004) (internal citations omitted).

The question of wantonness often arises in car wreck cases. *See, e.g., Essary*, 992 So. 2d at 6–9*; Scott v. Villegas*, 723 So. 2d 642, 642–43 (Ala. 1998). In Alabama, drivers are presumed to not engage in self-destructive behavior. *Essary*, 992 So. 2d at 12. Therefore, a defendant's behavior presumptively lacks the culpability required for wantonness when it creates a "risk of injury to [himself] ... as real as any risk of injury to the plaintiffs." *Id.*  Applying this presumption, the Alabama Supreme Court has held that a driver's failure "to bring his vehicle to a complete stop at the stop sign . . . before driving his vehicle into the intersection and causing the accident is not, in and of itself, substantial evidence of wantonness." *Thomas v. Heard*, 256 So. 3d 644, 659–60 (Ala. 2017), *reh'g denied* (Jan. 26, 2018). Instead, for a plaintiff to establish wantonness in a case like this one, he must point to "evidence of impaired judgment, such as from the consumption of alcohol" or conduct that is so "inherently reckless" that it signals the kind of "depravity consistent with disregard of instincts of safety and self-preservation." *See Essary*, 992 So. 2d at 12.

Plaintiff makes three arguments that there is substantial evidence of wanton conduct here. *See* Doc. 48 at 74-96.

First, Plaintiff argues that Defendant's failure to conduct a complete investigation into the cause of the accident shows wantonness. This theory asserts wantonness on Defendant's part, not Greathouse's part. But Count 1 in the complaint is for vicarious, and not direct, liability. *See* Doc. 1 at 3. In any event, Defendant's failure to determine whether Greathouse was at fault in the accident is not substantial evidence that Defendant "carried on with a reckless or conscious disregard of the rights or safety of others." Ala. Code § 6–11–20(b)(3). This case is plainly distinguishable from cases where the Alabama courts have held that wantonness may be established by a defendant's failure to take remedial steps to prevent similar injuries from occurring in the future. *See* Doc. 48 at 95 n.250.

Second, Plaintiff points to Greathouse's driving activity itself—driving through a stop sign without completely stopping and across a divided highway without substantially slowing down. But this is exactly the kind of conduct that—standing alone—the Alabama Supreme Court has held to be *insufficient* to show wantonness. *See Thomas*, 256 So. 3d at 659; *Essary*, 992 So. 2d at 6–9; *South Central Bell Tel. Co. Branum*, 568 So. 2d 795, 796 (Ala. 1990).

Third, Plaintiff argues that Greathouse was distracted by his cell phones at the time of the wreck. The parties do not dispute that especially distracted driving may

rise to the level of wantonness under Alabama law when combined with other facts, such as excessive speed or bad weather conditions. *See, e.g., Green v. Markovitch*, 385 F. Supp. 3d 1190, 1193 (N.D. Ala. 2019) (driver talking on cell phone in heavy traffic). Instead, Defendant argues that there is no substantial evidence that Greathouse was using his phones at the time of the accident and that his conduct does not otherwise rise to the level of wantonness.

Specifically, Defendant argues that Greathouse denied using his phones and that his phone records show that he was neither talking nor texting during the applicable time period. In response, Plaintiff argues that circumstantial evidence creates a genuine issue of material fact on this question, notwithstanding the absence of direct evidence that Greathouse was using a cell phone at the time of the wreck. That circumstantial evidence includes: (1) that Greathouse had two cell phones mounted around the dashboard of his car, which were powered on at the time of the wreck, (2) that at least one cell phone could be used for "apps," social media, and other Internet-related uses in addition to texting and voice calls, (3) that the nature of the wreck and Greathouse's inability to explain why he did not see Dr. Claussen's car are substantial evidence that his statements about using his phones are not credible, and (4) that Greathouse continued to use one or more of his cell phones after the wreck, which would have wiped evidence of internet and "app" usage from the phone.

The Court assumes, without deciding, that Plaintiff has adduced sufficient evidence to raise a genuine issue of fact as to whether Greathouse was using one of his cell phones for an "app" at the time of the wreck. [1]  But the Court disagrees that Alabama law supports the proposition that a driver's unspecified use of a cell phone rises to the level of wanton behavior. It is almost certainly negligent to be distracted by one's cell phone while driving.  But it is not illegal under Alabama law to use a cell phone while driving except in limited circumstances. *See* Ala. Code § 32-5A-350 (banning use of phones for texting, but expressly allowing other uses). And the unspecified use of a cell phone in a car is not "so inherently reckless that it would signal the kind of depravity consistent with disregard of instincts of safety and self-preservation." *Jinright v. Werner Enterprises, Inc.*, 607 F. Supp. 2d 1274, 1276-1277 (M.D. Ala. 2009).  To hold otherwise would undermine the *Essary* presumption and make many, if not most, car wreck cases about wantonness instead of negligence. *See, e.g., James v. Krall*, 2018 WL 9392747 (Va. Cir. Ct. June 21, 2018) (dismissing

---

[1] Plaintiff argues that he should be allowed to argue a spoliation inference to the jury based on Greathouse's continued use of the cell phones after the wreck. Because the Court is assuming for the sake of argument that Plaintiff can adduce substantial evidence that Greathouse was using one of his phones at the time of the wreck, the Court need not reach this issue. The Court notes that Plaintiff never requested that Greathouse stop using his cell phones, *see* Doc. 47-28; Doc. 47-29, and there is no evidence of bad faith or intent that would warrant the extreme sanction of an adverse inference instruction, *see, e.g., Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1310 (11th Cir. 2009); Fed. R. Civ. P. 37(e)(2). Accordingly, the Court is not presently satisfied that a spoliation instruction is appropriate.  If Plaintiff still wants to argue a spoliation inference to the jury at trial, he should file a motion in limine on the issue in enough time for the Court to hold a hearing before trial.

wantonness claim under Virginia law because "[u]sing a cell phone while driving is undoubtedly potentially dangerous, but . . . it is in fact, unfortunately, an extremely common practice.").

For these reasons, no Alabama court has held that a driver's decision to use a cell phone, without more, rebuts the *Essary* presumption and establishes wanton conduct. Instead, courts hold that there is an inference of wanton conduct based on a driver's use of a cell phone only when other characteristics of the crash made the use of a cell phone especially dangerous. *See, e.g., Davis v. Automatic Food Serv., Inc.*, 2015 WL 7455544, at *3 (M.D. Ala. Nov. 23, 2015) (holding that "a reasonable jury could find that abruptly stopping on a wet road in two-way traffic while talking on a cell phone is 'inherently reckless conduct' and therefore constitutes wantonness."). In the Northern District of Alabama's recent opinion in *Green*, for example, the driver was talking on his cell phone when he decided to change lanes in heavy traffic. He was also speeding. Despite these road conditions, the driver "did not make sure that he was clear of Plaintiffs' vehicle before merging into the right lane." *Green*, 385 F. Supp. 3d at 1196. Here, there is no evidence Greathouse was using his phone to talk or text. And some cell phone "app" uses are expressly allowed under Alabama law. *See* Ala. Code § 32-5A-350(e) (allowing use of phone for GPS). Accordingly, assuming without deciding that a reasonable jury could find that Greathouse was using an unspecified cell phone "app" at the time of the wreck, there

was nothing about the road or weather that made this conduct especially dangerous or reckless such that it could rise to the level of wantonness.

Defendant's motion for partial summary judgment on the wantonness claim is due to be granted.

### Count 3—Negligent hiring

To establish negligent hiring "a plaintiff must demonstrate that the employer knew, or in the exercise of ordinary care should have known, that its employee was incompetent" when he was hired. *Akers v. Sanderson Farms, Inc.*, No. 7:13-CV-RDP, 2015 WL 114221, *6 (N.D. Ala. Jan. 8, 2015) (citing *Britt v. USA Truck, Inc.*, 2007 WL 4554027, *4 (M.D. Ala. 2007)) (emphasis added). "'Incompetence' is defined as the 'state or fact of being unable or unqualified to do something." *Askew v. R&L Transfer, Inc.*, 676 F. Supp. 2d 1298, 1303 (M.D. Ala. 2009) (quoting *Halford v. Alamo Rent-A-Car, LLC*, 921 So. 2d 409, 416 (Ala. 2005)). The Alabama Supreme Court has determined that "the incompetence of a driver is measured by the driver's ability (or inability) to properly drive a vehicle." *Halford*, 921 So. 2d at 413-14. This factor may be established by reference to a driver's "general incompetence" or "habitual negligence." *Edwards v. Valentine*, 926 So. 2d 315, 322 (Ala. 2005).

There is no genuine issue over the material fact that Defendant was not negligent when it hired Greathouse. When he was hired, Greathouse held a

Commercial Driver's License issued by the State of Alabama. Defendant ran a three-year check on Greathouse's driving history, which Plaintiff's expert testified was the industry standard, and that check showed no accidents or traffic violations. Defendant secured a verification from Greathouse's former employer that he had no safety performance issues over the previous 14 years. Defendant also made Greathouse successfully complete a road test.

Plaintiff argues that Defendant was negligent for failing to uncover Greathouse's decades-old driver's license suspension. But, assuming without deciding that Defendant had a duty to uncover this information, it would still not create a genuine issue of fact as to whether Greathouse was incompetent. "The law requires that a driver have had a 'demonstrated ability to properly drive a vehicle'; it does not require that he have a record completely free of mistake." *Craft v. Triumph Logistics, Inc*., 107 F. Supp. 3d 1218, 1225 (M.D. Ala. 2015) (quoting *Askew*, 676 F. Supp. 2d at 1303). And Alabama courts have been especially reluctant to allow a negligent hiring claim when the driver's accidents or speeding tickets were in the distant past. *See Pryor v. Brown & Root USA, Inc*., 674 So. 2d 45, 52 (Ala. 1995) ("[Defendant]'s prior driving record—two speeding tickets and a suspended prosecution of a DUI charge over a 10-year period—is not sufficient to support a claim of negligent entrustment."); *Askew*, 676 F. Supp. 2d at 1303 (finding that a driver's record of two moving violations and four minor accidents over an

approximately nine-year period did not amount to incompetence).  At the time Greathouse was hired, he had held a CDL for almost 20 years, had no wrecks or accidents within the prior three years, passed a driving test, and had no safety performance issues with his prior employer over the course of 14 years.  Even if Defendant knew or had a duty to know that Greathouse had a suspended license 20 years before he was hired, it would not create a genuine issue of material fact as to whether Greathouse was incompetent under Alabama law at the time he was hired.

### Counts 3 & 5—Negligent Supervision and Entrustment

As with Plaintiff's negligent hiring claim, Plaintiff must show for negligent supervision and/or entrustment that Greathouse was incompetent to drive. *E.g.* *Akers*, 2015 WL 114221 at *6.  But Plaintiff's negligent supervision and entrustment claims focus on a different snapshot in time. Specifically, Plaintiff argues that Defendant was negligent because it did not stop Greathouse from driving its truck after his DUI arrest and nolo plea.

Plaintiff has two theories.  First, Plaintiff argues negligence *per se* because applicable regulations purportedly required the suspension of Greathouse's CDL on account of his arrest and plea. Second and in the alternative, Plaintiff argues that the industry-wide standard of care, which is reflected in part by the regulations, required Defendant to stop Greathouse from driving or adopt some other remedial measure.

Defendant makes four arguments for summary judgment on Plaintiff's negligence theory of liability. First, Defendant argues, correctly, that Plaintiff did not raise negligence *per se* in his complaint. Second, Defendant argues that there is no genuine dispute of fact that Greathouse was not incompetent to drive at the time of the accident. Third, Defendant argues that, even if Greathouse was incompetent to drive, Plaintiff lacks substantial evidence that Defendant knew or should have known that he was incompetent. Fourth, Defendant argues that Plaintiff cannot establish that its alleged negligence was the proximate cause of the accident.

As an initial matter, Defendant is correct that Plaintiff failed to raise the issue of negligence *per se* in his complaint. It is clearly established precedent in this Circuit that "for a plaintiff to assert negligence *per se*, such a claim must be included in the complaint." *Zatarain v. Swift Transp., Inc.*, 776 F. Supp. 2d 1282, 1292 (M.D. Ala. 2011). Even before *Twombly* and *Iqbal*, the liberal pleading standard for a complaint did not allow a plaintiff to raise a new claim, such as negligence *per se*, in opposition to a summary judgment motion. *See Gilmour v. Gates, McDonald & Co.,* 382 F.3d 1312, 1314 (11th Cir. 2004). Accordingly, Plaintiff is limited to theories about general negligence.

Because Plaintiff's newly proposed negligence *per se* claim is foreclosed, the Court must determine whether Plaintiff has offered substantial evidence to make out a claim under the law of negligent entrustment or negligent supervision. These

theories of liability, respectively, fault an employer for entrusting an employee with a vehicle despite evidence of his incompetence and for failing to reasonably supervise that employee despite evidence of his incompetence.

The parties address these negligence claims together, and the Court will as well. To proceed to trial on a claim of negligent supervision or entrustment in a case like this one, a plaintiff must produce substantial evidence that (1) the employee was negligent, (2) the negligence occurred because the employee was incompetent, (3) the employer had actual or constructive notice of the incompetence, (4) the employer failed to exercise reasonable care in supervising the employee after the point at which the employer should have known about his incompetence, and (5) the negligence of the employer was a proximate cause of the injury suffered by the plaintiff. *See Jones Exp., Inc. v. Jackson*, 86 So. 3d 298, 305 (Ala. 2010) (supervision); *Voyager Ins. v. Whitson*, 867 So.2d 1065, 1073 (Ala. 2003) (entrustment).

The Court holds that Plaintiff has adduced substantial evidence for a reasonable jury to conclude that Greathouse was negligent (which is undisputed for purposes of summary judgment), that he was incompetent to drive Defendant's vehicle at the time of the accident, that Defendant knew or should have known of his incompetence, that Defendant failed to take reasonably prudent steps to

ameliorate the incompetence, and that Defendant's alleged negligence proximately caused the accident.[2]

*1. Incompetence*

Plaintiff argues that Greathouse was incompetent to drive under a generally applicable industry standard of care, which is reflected in various statutes and regulations and evidenced by proposed expert testimony. Specifically, Plaintiff argues that Greathouse was incompetent to drive Defendant's vehicle under the Alabama Uniform Commercial Driver License Act ("AUCDLA") as set forth at Ala. Code § 32-6-49.6(b)(1), the Alabama Public Service Commission Regulations ("APSCR") as set forth at Ala. Adm. Code § 770-X-10-.17-1-.07(1)(c), and the Federal Motor Carrier Safety Regulations ("FMCSR") as set forth at 49 C.F.R. § 383.37(b). The FMCSR, AUCDLA, and APSCR all generally disqualify the holder of a commercial driver's license (CDL) from operating a commercial motor vehicle (CMV) for one year after a conviction for driving under the influence of drugs or alcohol. *See* 49 C.F.R 383.51(a)(2); Ala. Code § 32-6-49.11(a)(1); Ala. Adm. Code § 770-X-10-.17-1-.07(1)(c). Plaintiff also has two experts who support his argument

---

[2] Despite a passing reference to negligent retention in the complaint, Plaintiff does little to advance it in the briefing. The main issue in this case is not whether Greathouse should have been fired, but whether he should have been driving a company car at the time of the accident even if he was still employed. Although Defendant argues in its motion for summary judgment that the retention claim should be thrown out, Plaintiff does not meaningfully attempt to rehabilitate this allegation as a separate stand-alone claim in his brief. *See* Doc. 42 at 10-12; Doc. 48. Accordingly, the negligent retention clam is waived to the extent it is different or apart from the negligent supervision claim.

that Greathouse was incompetent to drive: Whitney Morgan and Roland Brown. They paint a dismal picture of Defendant's review of Greathouse's DUI proceedings in Oklahoma and Defendant's failure to take away his driving privileges after his nolo plea.

Defendant argues that (1) because the Oklahoma case resolved with a deferred adjudication and the truck that killed Claussen weighed less than 26,001 pounds, these regulations and statutes did not require that Greathouse be barred from driving the truck he was driving at the time of the accident and (2) Roland Brown's testimony is inadmissible under Rule 702. Neither argument is persuasive.

First, Defendant's arguments about the statutes and regulations miss the point. Because there is no negligence per se claim, the remaining negligence issue is whether Greathouse was incompetent to drive a commercial truck under an industry standard of care. Taking the facts in the light most favorable to the nonmovant, these statutes and regulations stand for the general proposition that a commercial driver should not drive within a year of being convicted of a crime that involved driving under the influence of drugs or alcohol. It may be that Greathouse's Oklahoma nolo plea and deferred adjudication are not technically convictions that trigger these statutes and regulations. *See* Doc. 42 at 10 & n. 3 (Defendant arguing this point). It may also be that the truck Greathouse was driving was a few thousand pounds too light to be covered by one or more of these statutes. *Compare* 49 CFR § 383.5

(driving ban applies to vehicles with *sticker* weight at or over 26,001 pounds) *with* Ala. Code § 32-6-49.3(17) (driving ban applies to vehicles with *registered* weight at or over 26,001 pounds). But the Plaintiff need not prove that Defendant violated these statutes to establish a general negligence claim. Greathouse's competency under Alabama law does not turn on whether it was technically legal for him to drive. Instead, Alabama "caselaw demonstrates . . . that we are solely concerned with a person's actual driving ability, not a legal disqualification." *Halford v. Alamo Rent-A-Car, LLC*, 921 So. 2d 409, 415 (Ala. 2005).

Second, Defendant cannot get around Plaintiff's experts. Although Defendant moves to exclude the testimony of Brown, it does not ask the Court to disregard Morgan's anticipated testimony for the purposes of summary judgment.[3] Morgan proposes to testify that Defendant did not use best practices that comply with industry standards. In his report, Morgan writes that "it is reasonable to believe, that had Mr. Greathouse's DUI/DWI arrest in January of 2017 been reported to the safety department prior to the April 11, 2018 collision involving Dr. Claussen,

---

[3] Defendant argues that Morgan and Brown's expert reports are inadmissible at summary judgment because they were not signed under penalty of perjury. *See* Doc. 53. Plaintiff argues that these reports can be considered for summary judgment, in part, because these experts adopted them in their depositions. *See* Doc. 65 at 7-8. Although it is better practice for a party opposing summary judgment to submit a sworn declaration instead of an unsworn report generated for discovery, the Court agrees with Plaintiff. *See Estate of Rogers v. Globe Life*, 2015 WL 412919, *7 (N.D. Ala. 2015) ("[i]n light of the fact that the Plaintiff has submitted sworn deposition testimony in which Dr. Lauridson has attested to his opinions, this Court will consider his report on summary judgment.").

PowerSecure would have disciplined/terminated him or sent him for the appropriate regulatory required treatment…" *See* Doc. 48 at 37. This anticipated testimony—from an unquestionably qualified expert—is sufficient for a reasonable jury to determine that Defendant was negligent in allowing Greathouse to drive.

Although Defendant accepts Morgan's expertise, Defendant moves to exclude the testimony of Roland Brown. The Court concludes, and Defendant admits, that Brown is qualified to give general opinions about customs and practices in the motor carrier world. *See* Doc. 54 at 11. After all, Brown's *curricula vitae* show decades of experience working with motor carriers in various capacities and as a consultant for at least the last 35 years. *See* Doc. 47-31. Defendant argues, however, that some of his opinions, "are due to be stricken as legal conclusions." *See* Doc. 43 at 1. Defendant is correct in part. "[T]he law in this circuit pertaining to the admissibility of an expert's opinion couched in legal terms is not crystal clear." *Hanson v. Waller*, 888 F.2d 806, 811 (11th Cir. 1989). A non-lawyer expert cannot testify about the meaning of a statute or regulation or about whether someone violated a law. *See Cooper v. Pac. Life Ins. Co.*, No. CV203-131, 2007 WL 430730, at *1 (S.D. Ga. Feb. 6, 2007). But where "the substance of the expert's testimony concerns ordinary practices and trade customs which are helpful to the fact-finder's evaluation of the parties' conduct against the standards of ordinary practice in the [] industry, his passing reference to a legal principle or assumption in an effort to place his opinions

in some sort of context will not justify the outright exclusion of the expert's [testimony] in its entirety." *Id.*

Brown's expert report states that the failure to disqualify Greathouse from driving after his Oklahoma nolo plea was a violation of industry standards and that a prudent operator would not have allowed Greathouse to drive. *See* Doc. 43-1 at 5 ¶¶ 7&11. Brown elaborates with vigor on those opinions in his deposition. *See* Doc. 42-11 at 101-103. Even though some of Brown's opinions are tantamount to legal conclusions, his opinions about industry standards are not. *See Hannah v. Gregg, Bland & Berry, Inc.*, 840 So. 2d 839, 852 (Ala. 2002) (holding "we do not agree…that one statement by an expert witness explaining a legal standard in the industry as to which that witness is an expert invalidates that portion of the expert's testimony that does not pertain to that legal standard."). Accordingly, Brown can testify about industry standards of care, which may be reflected in regulations and statutes, and he can testify about how a reasonable operator in the industry would comply with these statutes and regulations. But he cannot testify that those statutes and laws were violated as a matter of law, about the meaning of legal terms in, for example, Oklahoma's DUI statute, or the legal effect of Oklahoma's deferred adjudication.

Defendant also argues that Brown's opinions about whether Greathouse should be disqualified according to an industry standard are not reliable because he

has no experience in the specific area of driver disqualification. *See* Doc. 54 at 11. This is incorrect. "An expert is not necessarily unqualified simply because her experience does not precisely match the matter at hand." *Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1126, 1129 (M.D. Fla. 2007). Not all expert testimony subject to *Daubert* is also subject to scientific reliability standards and a court may decide that nonscientific expert testimony is reliable based upon knowledge and experience. *Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC*, 555 F.3d 1331, 1337 (11th Cir. 2009). Of course, if the witness is relying solely on experience then he must explain how that experience leads to the conclusion reached and why that experience is a sufficient basis for the opinion. *Webb v. Carnival Corp.*, 321 F.R.D. 420, 430 (S.D. Fla. 2017).

The Court is ever wary of simply "taking the expert's word for it." *Id.* Here, however, this is not an issue. In his expert report, Brown was careful to tell the Court that he was condemning certain failures based on their substandard nature in relation to standard industry practice. *See* Doc. 43-1 at 3-5. Brown further explains the basis of his opinions throughout his deposition. His opinions are based on "[his] experience and [his] association with other companies who operate fleets of trucks in discussion groups," Doc. 42-11 at 33, "seminars that [he has] led and conduct[s] with [his] clients," *id.* at 52, and "the knowledge [he has] of the industry and [his] exposure to other people other than just [his] own personal experience…discussion

23

groups and question and answer periods…numerous, numerous discussion groups and seminars," *id*. at 62.  This Court has held that an expert may rely on "specific experience" such as his "prior review of other company's . . . policies." *Lohr v. Zehner*, No. 2:12CV533-MHT, 2014 WL 2832192, at 5 (M.D. Ala. June 23, 2014).[4] Plaintiff has produced substantial evidence that Defendant should not have allowed Greathouse to drive Defendant's truck after his DUI arrest and nolo plea.

*2. Knowledge*

"To prove a claim under Alabama law for . . . negligent entrustment, negligent hiring, negligent supervision or negligent retention, a plaintiff must demonstrate that the employer knew, or in the exercise of ordinary care should have known, that its employee was incompetent." *Akers v. Sanderson Farms, Inc.*, No. 7:13-CV-RDP, 2015 WL 114221, 6 (N.D. Ala. Jan. 8, 2015) (citing *Britt v. USA Truck, Inc.*, 2007 WL 4554027, 4 (M.D. Ala. 2007)).  Defendant concedes that it had knowledge of Greathouse's initial arrest for drunk driving. *See* Doc. 42 at 9.  It further concedes that despite this notice, Greathouse's supervisor did not report the arrest to the PowerSecure safety department. *Id.* at 10.  The supervisor did report, however, to

---

[4] Defendant expends a great deal of energy attempting to distinguish *Lohr*, claiming that it is different because, there, the court found that specific policies had been reviewed. In truth, the cases are nearly indistinguishable.  The court in *Lohr* was more concerned that there was some objective process to which the witness could tether his opinion than that the process itself be in one form or another.  (2:12-cv-00533-MHT, Doc. 130-3 at 11)

the Chief Operating Officer of PowerSecure's Utility Division.  *See* Doc. 42-8 at 52.

The undisputed fact that PowerSecure received notice that its employee was arrested

for a DUI is sufficient to raise a jury issue about PowerSecure's knowledge of his

competency to drive.

In any event, Plaintiff's experts also testified that the failure of management

to follow up on the case and to obtain confirmation from the Oklahoma courts was

negligent under industry standards.  *Id.* at 102-104.  Specifically, Brown made it

clear at his deposition that, because Greathouse's supervisor admitted he had been

tracking the legal proceeding and knew that there was a potential drunk driving

conviction, he should have followed-up.  *Id.*  In addition, Brown testified that anyone

who is running a fleet of trucks the size of PowerSecure's should know to stay on

top of all arrests that involve the possibility of a DUI conviction.  This is substantial

evidence that Defendant knew, or in the exercise of ordinary care should have

known, that Greathouse was incompetent to drive.

### 3. Proximate Cause

Defendant also argues that there is no substantial evidence that its negligence

was the proximate cause of the accident. Alabama law defines proximate cause as

the "cause which, in the natural and probable sequence of events, and without the

intervention or coming in of some new or independent cause, produces the injury,

and without which the injury would not have occurred." *Mobile Gas Serv. Corp. v. Robinson*, 20 So. 3d 770, 780 (Ala. 2009).

The Court has determined that there is enough evidence for a jury to find that Defendant failed to act as a reasonably prudent business in light of prevailing industry standards. Any negligence that a jury might attribute to Greathouse will not be an intervening cause. In Alabama, the negligent use of a vehicle does "not insulate the negligence inherent in the entrusting of the vehicle to a known incompetent driver so as to break the chain of causation, when the driver's negligence resulted from his incompetent condition." *Blackmon v. United States*, 130 F. Supp. 498, 499 (S.D. Ala. 1955). There is substantial evidence to support an inference that Greathouse could be considered incompetent as a result of his *nolo contendere* plea and that any negligence on his part was the direct result of that incompetence.

Careful to construe all factual inferences in favor of the non-moving party, the Court concludes that substantial evidence exists to allow a reasonable jury to find proximate causation. Defendant knew that one of its drivers was arrested for a DUI. If Defendant had kept itself adequately informed about the DUI case, it would have learned of Greathouse's plea. If it had learned of his plea, it would presumably have acted as a reasonably prudent business and, in light of industry standards, prohibited Greathouse from driving a company vehicle. This prohibition would have lasted

through October 2018, one year after the plea. The accident, in which Greathouse drove a company vehicle, took place in April 2018. In the natural and probable sequence of events, Claussen's injury was the reasonably foreseeable result of PowerSecure's negligence in entrusting a vehicle to and/or negligently supervising Greathouse.

Plaintiff has adduced substantial evidence on each element of his negligent entrustment and negligent supervision claims. Accordingly, summary judgment must be denied as to those parts of Count 3 and all of Count 5.

## CONCLUSION

For the foregoing reasons, the Court **ORDERS** as follows:

1. Defendant PowerSecure's Motion for Summary Judgment (Doc. 42) is **GRANTED** as to Count 1, Count 3 as regards negligent hiring and negligent retention, and Count 4.

2. Defendant PowerSecure's Motion for Summary Judgment (Doc. 42) is **DENIED** as to Count 3 as regards negligent supervision and Count 5.

3. Defendant PowerSecure's Motion to Exclude the Opinions of Roland Brown (Doc. 43) is **GRANTED IN PART AND DENIED IN PART**.

4. Defendant PowerSecure's Motion to Strike (Doc. 53) is **DENIED AS MOOT**.

**DONE** and **ORDERED** this 7th day of October 2019.

_____/s/ Andrew L. Brasher_____
ANDREW L. BRASHER
UNITED STATES DISTRICT JUDGE